

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street*
*Suite 1100*
*White Plains, New York 10606*

June 20, 2024

<u>BY ECF</u>
The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

  Re:  ***United States v. Richard Leaf*, 22 Cr. 159 (PMH)**

Dear Judge Halpern:

  The Government respectfully submits this letter in advance of sentencing of the defendant, Richard Leaf. For the reasons set forth below, the Government submits that a significant sentence of at least 168 months' imprisonment would be sufficient but not greater than necessary to reflect the seriousness of the defendant's conduct, protect the public from further crimes of the defendant, and ensure adequate specific and general deterrence.

**A. Factual Background**

  The defendant admitted to law enforcement that he is sexually attracted to teenage boys and that he created several fictitious accounts across multiple platforms, including Skype, SnapChat, and ChatAvenue, to chat with teenage boys and receive photos and videos. (PSR ¶¶ 16-19, 22-25).  In creating these accounts, the defendant lied about his age by stating he was either an 18 or 23 year old—rather than in his 70s—and using a photo of a teenage boy in his online profile. (PSR ¶¶ 18-19, 25). One of the photos that the defendant used appears to have been of a teenage boy who was approximately 15 years old. (PSR ¶ 25). The defendant believed that he was talking to users who were either 15 or 16 years old. (PSR ¶ 19).

  A search of the defendant's computer by law enforcement revealed that he used a fake Skype account with the display name "Alex Bronson" to speak with a teenage male ("Victim-1"). (PSR ¶ 20). Victim-1 was 15 years old at the time. (PSR ¶ 21). The search also revealed a video displayed in split screen: the left side contained a static profile picture of a teenage male who the defendant was pretending to be and the right side contained a video of Victim-1 showering and masturbating. (PSR ¶¶ 20, 24). Law enforcement interviewed Victim-1, who stated that he had spoken to an "Alex" and "Brandon" on Skype and sent both of them nude videos. (PSR ¶¶ 21-24). Victim-1 described "Brandon" as being white, having long blond hair,

and living in New York. (PSR ¶ 23). The defendant had two Skype accounts with the display name "Brandon W" and "Brandon Williams."(PSR ¶¶ 18, 25).  Notably, the "Brandon Williams" account stated that "Brandon" was from New York and featured an approximately 15 year old boy with dirty blonde/light brown hair past his ears. (PSR ¶ 25). Victim-1 stated that "Brandon" asked him for nude photos of Victim-1. (PSR ¶ 23).

In addition, the defendant's computer had several files that contained child pornography. (PSR ¶¶ 27, 28). For example, the defendant possessed files described as follows: (i) a male minor (approximately 15 years old or younger) laying in bed with an erect penis; (ii) a fully clothed adult male who kisses, undresses, masturbates, and dry humps a small boy (approximately 5 or 6 years old); and (iii) two teenagers who are approximately 14 to 16 years old play fighting or wresting, before one teenager strips nude the younger teenager and masturbates the younger teenager while rubbing his stomach and chest area. (PSR ¶ 27(a), (c), (d)).  At least two of these files were stored in the cache for Skype and one was saved to the defendant's hard drive in a subfolder labeled "Pictures," which was in a folder labeled "Richard."  (PSR ¶ 27).  In addition, the defendant also had a fully nude photo of Victim-1 with a flaccid penis. (PSR ¶ 28(a)).

Finally, the defendant admitted to law enforcement on multiple occasions that he had sleepovers with students while he was a middle school teacher. During these sleepovers, the defendant admitted to touching the abdomen or chest of the student and masturbating to completion on some occasions. The defendant also admitted to wrestling shirtless with another student and exchanging backrubs and massages. The defendant estimated that these interactions occurred with three students on 45 to 75 occasions. (PSR ¶ 56).  Additionally, during these interviews, the defendant named these three students and noted that at least two of the students did not have one or both parents in their lives.

**B.    Procedural History**

The defendant was charged by complaint on February 19, 2021, and was arrested on February 23, 2021. (Dkt Nos. 2, 5). The defendant was presented the same day and released on the following, subject to among other conditions: home detention, location monitoring, surrender all devices that are currently in the defendant's possession that are capable of Internet access, refrain from Internet access through any type of device except for the computer that is being monitored by Pretrial Services, and refrain from accessing or possessing pornographic materials. (Dkt No. 5).

On or about February 3, 2022, while on release, the defendant had a video chat with another adult male who was showing his genitals. (PSR ¶ 7). Approximately six months later, the defendant admittedly purchased an iPad. Pretrial Services did not authorize the defendant to leave his home that day or purchase the iPad. (PSR ¶ 9). A review of that iPad revealed that the defendant's web browser had been set to "private" and that the last page viewed was for "Gay Chat Rooms" on Chat Avenue. (PSR ¶ 10(a)). In addition, the defendant had unmonitored communications on Skype and accessed  "Streamen.com," which appeared to be a pornographic "cam" website. (PSR ¶¶ 10(b), (c)). Following a bail violation hearing on August 24, 2022, the defendant was remanded. (PSR ¶ 12).

On March 16, 2022, the defendant was charged by Information with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and possessing images and videos of child pornography, in violation of  18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (PSR ¶¶ 1, 2).  On June 29, 2023, the defendant pled guilty before Your Honor to Count One of the Information for receiving child pornography.  (PSR ¶ 5).

**C.      The Plea Agreement and Guidelines Calculation**

In the plea agreement, the parties stipulated to the following calculation of the defendant's Guidelines:  Pursuant to U.S.S.G. § 2G2.2(a)(1), the base offense level is 22; two levels are added because the material involved a prepubescent minor, pursuant to U.S.S.G. § 2G2.2(b)(2); five levels are added because the offense involved distribution to a minor, pursuant to U.S.S.G. § 2G2.2(b)(3); four levels are added four levels are added because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, pursuant to U.S.S.G. § 2G2.2(b)(4); two levels are added because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, pursuant to U.S.S.G. § 2G2.2(b)(6); and three levels are added because the offense, including relevant conduct, involved between 150 and 300 images, pursuant to U.S.S.G. § 2G2.2(b)(7)(D). Three levels are subtracted for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), (b). Total offense level is 35. (PSR ¶ 6(a))

The plea agreement also placed the defendant in Criminal History Category I. (PSR ¶ 6(b)). Based on an offense level of 35 and Criminal History Category of I, the parties stipulated that the Guidelines range is 168 to 210 months' imprisonment. (PSR ¶ 6(c)(i)).

The defendant requests a sentence of 60 months. *See* Def. Mem. at 1.

The Probation Office calculated the same Guidelines range. (PSR ¶ 100). The Probation Office recommends a sentence of 60 months' imprisonment and 5 years of supervised release. (PSR at 28). In recommending a downward variance, the Probation Office notes that it must balance the seriousness of the defendant's conduct (which it characterizes as "a concern") with mitigating factors such as the defendant's age, consistent employment, and lack of criminal history. (PSR at 30).

**D.      Discussion**

**1.      Applicable Law**

As the Court knows, the Sentencing Guidelines, while no longer mandatory, still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), courts must treat them as the "starting point and the initial benchmark" for sentencing proceedings, *id.* at 49.

After calculating the Guidelines range, the Court must consider the factors outlined in Title 18, United States Code, Section 3553(a), which include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7); *see Gall v. United States*, 552 U.S. 32, 50 & n.6 (2007).

In determining the appropriate sentence, the statute directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## 2.    A Significant Sentence of at Least 168 Months' Imprisonment Is Appropriate in This Case

The Government respectfully submits that a sentence of at least 168 months' imprisonment is sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.  In particular, such a sentence would be sufficient but not greater than necessary to reflect the seriousness of the offense, the need to protect the public from further crimes of the defendant, and the need to assure both general and specific deterrence.

*First*, a sentence of at least 168 months' imprisonment is necessary to reflect the nature and circumstances of the offense, reflect the seriousness of the offense, and provide just punishment. There is no question here that the defendant's offense involves serious criminal conduct. The defendant—a former middle school teacher and camp counselor—posed as a teenager on multiple platforms to talk to young teenage boys.  (PSR ¶¶ 87, 94).  In these conversations, the defendant not only <u>asked</u> for nude photos but <u>received</u> nude photos from boys as young as 15 years old.  Indeed, the defendant made these young teenage boys believe that he was also a teenager—not a man in his 70s—and he took advantage of that fact. For example, the defendant recorded a video call with Victim-1 where Victim-1 was showering and masturbating. This was not an isolated incident. The defendant actively tried to meet and talk to young teenager boys because, as he admitted to law enforcement, he was sexually attracted to them. The

defendant maintained multiple fake profiles across several different platforms that allowed the defendant to chat with others, including Skype, Chat Avenue, and Snapchat.

The defendant's predatory conduct alone is enough to warrant a serious sentence. However, the defendant here went further. In addition to receiving and possessing child sexual abuse materials from Victim-1, the defendant also possessed other files containing child sexual abuse materials. While the defendant did not himself physically abuse these children, his receipt and possession of these images and videos fueled a market for producing, trading, and sharing such images and videos. The images and videos he possessed involved the victimization and abuse of numerous children, including a child as young as 5 or 6 years old. Those children had their innocence stolen and are victimized again each time their images and videos are viewed and disseminated by consumers of child pornography. As the Second Circuit has noted,

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is the exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States* v. *Reingold*, 731 F.3d 204, 216 (2d Cir. 2013). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). This interest extends to seeking to stamp out child pornography at all levels in the distribution chain. *See Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The Supreme Court recognized in *Paroline v. United States* that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." 572 U.S. 434, 456-57 (2014) (also finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images."). "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy." *Id.* at 457.

*Second*, a sentence of at least 168 months' imprisonment is also appropriate given the defendant's history and characteristics and the need to promote respect for the law. The defendant's conduct is also especially troublesome given his breach of trust in the community. As described above, the defendant admitted on multiple occasions that he had sleepovers with at least three students while he was a middle school teacher during the 1980s. During these sleepovers, the defendant admitted that he touched the students and masturbated as the students

were sleeping, that he wrestled with a student, and that he gave backrubs and massages to at least one student.  The defendant's conduct is not only predatory but a betrayal of the trust collectively placed in him by students, parents, and the community. The defendant argues that "[h]e has never sexually abused his children or any other child." (Def. Mem. at 19). This is flatly contradicted by the defendant's voluntary admissions to law enforcement on several different occasions. Indeed, the defendant named the three middle school students that he sexual abused again and again.

A significant sentence is also necessary given the defendant's long standing interest in teenage boys and his efforts to remain close to them for decades. The defendant retired from teaching in 2004 but continued to seek out positions of employment that would allow him to be close to young boys: he was an announcer at the Westchester County Center from 1981 to 2020, he was the announcer for Iona College basketball games from 2009 to 2021, he was an announcer for the Metro Atlantic Athletic conference from 2014 to 2020, he interviewed scholar athletes from 2010 to 2020, and he was a soccer official with the National Federation of State High School Associations. (PSR ¶¶ 89-93).  These positions allowed the defendant to have multiple contacts with minors in the community and his receipt and possession of child pornography during this time is yet another example of how he betrayed the trust bestowed upon him by the community.

Moreover, the defendant's conduct while on pretrial release is extremely concerning. In February 2022, Pretrial Services caught the defendant chatting with another adult male who was showing his genitals. Realizing that he could not use monitored devices in this fashion, the defendant went to the store without Pretrial Services permission and purchased an iPad, which he believed would not be monitored. Now free to have unmonitored access to the Internet, the defendant resumed his behavior while taking the precaution of setting his web browser to "private": he had unmonitored communications on Skype, visited Chat Avenue, and accessed a suspected pornographic "cam" site by the name of "Streamen.com."  In other words, the defendant went to extreme lengths to circumvent his conditions of release in order to access Chat Avenue and Skype—the same two sites he had previously used to talk to teenage boys and the same site (Skype) whose cache contained child sexual abuse materials.

*Third*, the need to assure adequate deterrence likewise weighs in favor of a Guidelines sentence. Although the defendant's conduct has been ascribed to emotional distress and sexual gratification, *see* PSR at 29, it does not appear aberrational. As set forth above, the defendant has been abusing teenage boys since at least the 1980s and he actively solicited pornographic materials from teenage boys he met online.

Against this backdrop, the Government acknowledges the mitigating factors noted in the Presentence Investigation Report: the defendant's age, consistent employment history, and lack of criminal history.  (PSR at 29).  The Government, however, disagrees that the defendant's employment history and lack of criminal history are mitigating factors here. As described in more detail above, the defendant consistently sought out positions of employment that gave him

access to and facilitated contact with minors. He then used that position (in the case of his employment as a middle school teacher) to abuse multiple students who trusted him.

*Finally*, the defendant's reliance on the Second Circuit's narrow decision in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), is misplaced. Contrary to the defendant's suggestion, the Circuit has emphasized that *Dorvee* "do[es] not stand for the proposition that nearly any sentence for child pornography above the mandatory minimum is substantively unreasonable." *United States v. Muzio*, 966 F.3d 61, 64-65 (2d Cir. 2020); *United States v. Clarke*, 979 F.3d 82, 99 (2d Cir. 2020) ("In *Dorvee*, we did not impose a heightened standard for the application of § 2G2.2 enhancements in individual cases. Rather, we were concerned with the substantive reasonableness of even those sentences that resulted from adherence to the prescribed Guidelines range."). Indeed, in *Dorvee*, the Court "determined that the sentencing court had properly applied the § 2G2.2 enhancements, concluding that the court committed procedural error only in its separate error of failing to recognize that a statutory maximum limited the applicable Guidelines range." *Clarke*, 979 F.3d at 99-100. In *Muzio*, the Circuit explained that *Dorvee* described the "limited context" and "narrow circumstances" in which defendants had no contact with children, were not involved in child pornography production, but were nonetheless sentenced at or near the statutory maximum. *Id.*; *United States v. Talada*, 828 F. App'x 52 (2d Cir. 2020) (summary order) ("As we have explained, our warning in *Dorvee* that a 'straightforward application of the sentencing Guidelines can lead to unreasonable sentences' arose in the 'limited context' and 'narrow circumstances' present in that case, which involved, among other things, a defendant who – unlike [the defendant] – 'had no contact with children,' even virtually."). The *Dorvee* panel also explained that the sentencing judge based its decision on factors unsupported or contradicted by the record. *Dorvee*, 616 F.3d at 183-84.

Given the circumstances of this case and the defendant's offense conduct, defense counsel's reliance on *Dorvee* and his criticism of the child pornography guidelines are misplaced. Unlike in *Dorvee*, the defendant engaged in a sexually explicit video conversation with a 15-year-old boy, which he recorded and saved, and he admittedly engaged in sexually explicit conduct with multiple teenage boys while he was a middle school teacher.

**E.      Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant of at least 168 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

By: _____
Jennifer N. Ong
Assistant United States Attorney
(212) 637-2224

cc:    Michael Burke, Esq. (by ECF